## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES LIFE INSURANCE | : | |
| COMPANY and UNION CENTRAL LIFE | : | |
| INSURANCE COMPANY, | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 3:13-CV-00380 (VLB) |
| | : | |
| ERIKA MARSHALL, WYLLY MARSHALL, | : | |
| VIRGINIA MARSHALL, JANINE MARSHALL | : | |
| (individually and as legal guardian of L.M.), | : | |
| LEANNE HUDSON (individually and as | : | |
| legal guardian of L.D.), and CHRISTOPHER | : | |
| KENNEY, | : | |
|     Defendants. | : | May 16, 2014 |

## MEMORANDUM OF DECISION DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

### I.    Introduction

Before the Court are two consolidated interpleader actions arising out of several competing claims to two life insurance policies purchased by and insuring the life of William Marshall.  United States Life Insurance Company ("U.S. Life") and Union Central Life Insurance Company ("Union Central") originally filed two separate actions for interpleader relief pursuant to Federal Rule of Civil Procedure 22 against Defendants Erika Marshall, Wylly Marshall, Virginia Marshall, Janine Marshall (individually and as legal guardian of L.M., a minor child), Leanne Hudson (individually and as legal guardian of L.D., a minor child), and Christopher Kenney, to whom these insurance companies have been unable to distribute the proceeds of two life insurance policies based on various

1

competing claims.  *See* civil action nos. 3:13-CV-00380 and 3:13-CV-00919.  U.S.
Life and Union Central have also invoked this Court's diversity jurisdiction.  The
Court consolidated the two actions under the present docket number in October
2013.  [Dkt. # 69].

While interpleader pursuant to Rule 22 is appropriate in this case, this
Court lacks jurisdiction to hear the defendants' claims pursuant to both the
*Rooker-Feldman* doctrine and the domestic relations exception to federal
jurisdiction.  Thus, the Court dismisses this action *sua sponte* for lack of subject
matter jurisdiction.

II.    <u>Background</u>

The following facts are taken from U.S. Life's and Union Central's
complaints, and from the Defendants' Statements of Claims.

In 1993 William Marshall applied for and was issued a renewable ten-year
term life insurance policy from U.S. Life, policy number 1074918, with a face value
of $1 million and an expiration date of September 27, 2003.  Mr. Marshall
designated as primary beneficiary his then-wife, Erika Marshall, and his two then-
minor daughters, Wylly and Virginia Marshall, as equal contingent beneficiaries.
[Dkt. 1, U.S. Life Comp. ¶¶10, 11].  Mr. Marshall renewed this policy at its expiry in
2003.  [*Id.* at ¶¶12-14].  In 1993 William Marshall also applied for and was issued a
whole life level term life insurance policy from Union Central, policy number
03039988 and issue date September 13, 1993, with a face value of $500,000.  Mr.
Marshall designated Erika Marshall as primary beneficiary and "the children of

this marriage," Wylly and Virginia Marshall, as equal contingent beneficiaries. [Dkt. 81, Union Central Compl. ¶¶10, 11].

On June 18, 2002 William and Erika Marshall entered into a Separation Agreement which was incorporated into a divorce decree issued by the Connecticut Superior Court for the Judicial Ddistrict of Stamford.  [Dkt. 53, Erika Marshall Claim, ¶3; dkt. 1-1, Erika Ag., ecf. p.16].  Pursuant to paragraph 5.1 of the Separation Agreement, "[f]or so long as the Husband has an alimony obligation," William Marshall was obligated to name Erika Marshall and their children "as the irrevocable beneficiaries of the insurance on his life in the amounts and under the policies listed on Schedule B," which included both the Union Central and U.S. Life policies.  [Dkt. 53, Erika Marshall Claim, ¶3; dkt. 1-1, Erika Ag., ecf. p.20 ¶5.1, p.38 Sched. B].  Pursuant to paragraph 3.1 of the Separation Agreement, Mr. Marshall's alimony obligation to Erika Marshall was to terminate upon the earlier of the death of either party, Erika Marshall's marriage, or June 1, 2012.  [Dkt. 1-1, Erika Ag., ecf. p.19 ¶3.1].  On December 4, 2010 the Connecticut Superior Court modified the June 1, 2012 date to December 1, 2013.  [Dkt. 68, J. Marshall & C. Kenney Special Defenses, ¶13].  Paragraph 5.2 of the Separation Agreement further provided that William Marshall's "obligation to provide life insurance for the minor children shall terminate as to each child as the Husband's obligation to support each child ends."  [Dkt. 1-1, Erika Ag., ecf. p.20 ¶5.2].

After his divorce from Erika, William Marshall married Janine Marshall. Seven years after his divorce from Erika, on July 29, 2009, William Marshall

entered into a Separation Agreement[1] with Janine which was incorporated into a divorce decree issued by the Connecticut Superior Court for the Judicial District of Stamford.  [Dkt. 68, J. Marshall & C. Kenney Special Defenses, ¶16].  Janine Marshall represents that this Agreement required William Marshall to designate and maintain Janine as the beneficiary of $750,000 in life insurance death benefits by naming her beneficiary of the both the Union Central and U.S. Life policies, for so long as William Marshall was obligated to make alimony payments to Janine. [Dkt. 68, J. Marshall & C. Kenney Special Defenses, ¶¶18-20]. There is no evidence or claim that the superior court order that William Marshall designate his first wife and children beneficiaries until December 1, 2013 was vacated or modified.

William Marshall was further obligated to pay alimony to Janine "until her death, remarriage or cohabitation."  [*Id*. at ¶17].  Further, Janine Marshall represents that "[b]etween the execution of [her] Separation Agreement as an order of the superior court and the time of his death on December 27, 2012, the Decedent represented to Janine Marshall and the superior court that Janine Marshall was a beneficiary under the Policies set forth in Janine's Separation Agreement." [*Id*. at ¶21].  She further represents that the purpose of the life insurance clauses in this Agreement were to provide for her support and maintenance and that of L.M., her and William Marshall's minor daughter.  [*Id*. at ¶24].  The document in which Janine Marshall makes these claims is not verified and the transcript of the proceeding is not attached as an exhibit to her pleading.

---

[1] The parties have not provided the Court with a copy of the Separation Agreement between Janine and William Marshall.

On August 4, 2009, U.S. Life received a written request from William Marshall to change the beneficiaries of the U.S. Life policy to Wylly Marshall ($200,000), Virginia Marshall ($150,000), L.M. ($150,000), Leanne Hudson ($250,000), L.D. ($50,000), and Christopher Kenney ($200,000).  [Dkt. 1, U.S. Life Comp. ¶17].  On August 6, 2009 U.S. Life confirmed the change of primary beneficiaries of the U.S. Life policy.  [Dkt. 1, U.S. Life Comp. ¶18].  On or about August 6, 2009, Union Central also received a written request from William Marshall to change the beneficiaries of the Union Central policy to Wylly Marshall (7.5%), Virginia Marshall (5%), L.M. (2.5%), Leanne Hudson (7.5%), L.D. (0.5%), Christopher Kenney (2%), and Janine Marshall (75% until August 1, 2014), which request Union Central honored.  [Dkt. 81, Union Central Compl. ¶12].

William Marshall died on December 27, 2012.  [Dkt. 1, U.S. Life Comp. ¶19].  By letter dated January 3, 2013 to Erika Marshall, U.S. Life confirmed notice of the death of the decedent and enclosed the claim forms and instructions for submitting a claim.  [*Id.* at ¶21].  Union Central provided Erika Marshall with the claim forms and instructions for submitting a claim on the Union Central policy by letter dated December 28, 2012.  [Dkt. 81, Union Central Compl. ¶ 15].  Thereafter, Erika Marshall – who was no longer a listed beneficiary on either policy – informed both U.S. Life and Union Central by letters dated January 22, 2013 that she "was supposed to be the irrevocable beneficiary" of the policies in accordance with the terms of the 2002 Separation Agreement between her and William Marshall, which she enclosed, and that the letters should be considered formal claims against the policies.  [Dkt. 1, U.S. Life Comp. ¶22; dkt. 81, Union

Central Compl. ¶22].  Pursuant to the Separation Agreement between Mr. Marshall and first wife Erika Marshall, Mr. Marshall's alimony obligation to Erika terminated upon his death.  [Dkt. 53, Erika Marshall Claim, ¶5; dkt. 1-1, Erika Ag., ¶3.1].

Erika Marshall argues that she is entitled to the proceeds of both policies based on the explicit terms of her 2002 Separation Agreement with William Marshall.  [Dkt. 53, Erika Marshall Claim].  Janine Marshall and Christopher Kenney, however, argue that "it is unfair, inequitable and unconscionable for Erika to have the benefit of all of the proceeds of [the life insurance policies]" for reasons including that Janine Marshall is under fifty years of age while Erika Marshall is over fifty; Erika Marshall is "a person of independent  wealth and means" while Janine is not wealthy and is underemployed as a result of her obligations as a mother to L.M., which also prevents her from seeking more gainful employment; L.M. is a minor while Wylly and Virginia Marshall have reached the age of majority; William Marshall "never intended to provide a death benefit to Erika except to secure his obligation to pay alimony;" at the time of Mr. Marshall's death he owed alimony to Erika constituting only approximately twenty percent of the available proceeds of all of his life insurance policies; and because "[i]t was clearly the intention of the Decedent to provide for the family members that most needed the financial support."  [Dkt. 68, J. Marshall & C. Kenney Special Defenses, ¶¶25, 27].  Janine Marshall also claims that pursuant to her own Separation Agreement with William Marshall she was entitled to $750,000 of life insurance proceeds immediately upon William Marshall's death.  [Dkt. 68, J. Marshall & C. Kenney Special Defenses, ¶29].

III.    <u>Legal Standard</u>

"Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other."  *Hagans v. Lavine*, 415 U.S. 528, 538 (1974).  Jurisdiction must be established as a "threshold matter," a requirement that "spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal quotation marks and citation omitted).  Unlike state courts, which are courts of general jurisdiction, federal courts are courts of limited jurisdiction possessing only that power authorized by the Constitution and by statute.  *Mims v. Arrow Fin. Servs, LLC*, 132 S. Ct. 740, 747 (2012); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); U.S. CONST. art. III, § 2.  "It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 768 (2d Cir. 2010) (internal quotation marks and citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).

Lack of subject matter jurisdiction may be raised at any time by a party or by the court *sua sponte*.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.  Subject-matter jurisdiction can never be waived or forfeited.") (internal citations

omitted); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("Courts do not usually raise claims or arguments on their own.  But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

IV.    Analysis

a.  The *Rooker-Feldman* Doctrine

The Court first concludes that it does not possess subject matter jurisdiction over this action pursuant to the *Rooker-Feldman* doctrine because the Plaintiffs challenge the validity and or equity of and seek an order of this court abrogating the terms of the superior court final order dissolving the marriage of Erika and William Marshall.

The United States Supreme Court is the only federal court that has jurisdiction to review state court decisions.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) ("Review of [state court] decisions may be had only in this Court."); *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) (pursuant to the *Rooker-Feldman doctrine*, "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments").  Pursuant to the so-called *Rooker-Feldman* doctrine, a United States district court "has no authority to review final judgments of a state court in

judicial proceedings." *Feldman*, 460 U.S. at 482; *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (noting that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *Russo v. GMAC Mortgage, LLC*, 549 F. App'x 8, 9 (2d Cir. 2013) (the *Rooker-Feldman* doctrine dictates that district courts lack subject matter jurisdiction "over claims that effectively challenge state court judgments."). In other words, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003).

Both Janine Marshall and Christopher Kenney explicitly seek review and modification of the Separation Agreement between decedent William Marshall and ex-wife Erika Marshall, which was incorporated into the divorce decree issued by the Connecticut Superior Court and which the claimants agree deemed Erika Marshall the primary beneficiary of both of decedent's life insurance policies at the time of William Marshall's death. Essentially, Janine and Christopher beseech this Court to either wholly or partially invalidate the Separation Agreement between Erika and the decedent in favor of their own claims to the proceeds of the decedent's policies, and based upon William Marshall's beneficiary elections modified without leave of the Connecticut Superior Court. To consider the relief these defendants seek and to assert jurisdiction in this circumstance would constitute "an exercise of appellate jurisdiction" with which this Court has not been vested. *Rooker,* 263 U.S. at 416.

It would be impossible for this Court to consider Janine's (or, for that matter, Christopher's, L.M.'s, L.D.'s, or Leanne Hudson's) claims to a portion of William Marshall's life insurance benefits without engaging in direct review of the two divorce decrees rendered by the Connecticut state courts, the first of which names Erika Marshall as the primary beneficiary of William Marshall's life insurance policies, and the Court could not rule in Janine's favor without effectively reversing or contradicting the state court decree as to Erika and William's divorce.  Such a review is not permissible under *Rooker-Feldman*.  As courts in this circuit have often held in cases involving matrimonial and custody disputes, well-settled jurisdictional restrictions bar this Court from adjudicating this dispute.  *See, e.g., Elmasri v. England*, 111 F. Supp. 2d 212 (E.D.N.Y. 2000) (*Rooker-Feldman* doctrine barred district court's review of complaint alleging a conspiracy to lie to state court justice handling plaintiff's divorce and custody proceedings, as complaint was an attempt to overturn, at least in part, decision of the state court regarding custody of plaintiff's children); *Puletti v. Patel*, 05 CV 2293 (SJ), 2006 WL 2010809 (E.D.N.Y. July 14, 2006) (plaintiff's claims were barred under *Rooker-Feldman* as they sought to have the district court overturn the state court stipulation concerning the custody arrangement of plaintiff's son).

Accordingly, this case is barred by the *Rooker-Feldman* doctrine and must be dismissed.

### b.  The Domestic Relations Exception to Federal Jurisdiction

The domestic relations exception to federal jurisdiction also bars this Court's review of this action.

The United States Supreme Court has long recognized that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94 (1890).  Thus, the domestic relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Federal courts "should further abstain from exercising jurisdiction over cases 'on the verge' of being matrimonial in nature." *Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (citing *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir. 1990)).  This exception is rooted in policy considerations recognizing both the "special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees" and that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704.  Correlatively, the Second Circuit has held that because interpleader is an equitable remedy, "a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable." *Am. Airlines, Inc. v. Block*, 905 F.2d at 14.

Here, Janine Marshall recognizes the existence of the Separation Agreement between Erika and William Marshall, including the term that names Erika as the primary beneficiary of the U.S. Life and Union Central life insurance

policies.  Nonetheless, Janine beseeches this Court to either wholly disregard this Separation Agreement in favor of her own, or to determine the appropriate allocation of the proceeds of both the U.S. Life and Union Central policies based on equity.  Such a review would require the Court to make a determination as to an appropriate allocation of monetary support and maintenance for both Janine Marshall, the decedent's second ex-wife, and their minor child, L.M., and to inject itself into child and spousal support principles which are beyond the ken of this Court and squarely within the expertise of the Connecticut Superior Court.  This is exactly the "matrimonial in nature" situation in which the domestic relations exception to this Court's jurisdiction applies.

Further, as discussed previously, Janine Marshall is asking this Court to effectively modify the divorce decree issued by the Connecticut superior court as to the marriage between Erika and William Marshall which explicitly names Erika Marshall the primary beneficiary of Mr. Marshall's life insurance policies.  The remaining defendants, with the exception of Erika Marshall, have effectively asked this Court to do the same.  In addition to being barred by the *Rooker-Feldman* doctrine, this claim is barred by the domestic relations exception.  *See Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir. 1995) (recognizing that *Ankenbrandt* found the domestic relations exception to be "very narrow" and does not "strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree" or a child custody decree).

The modification of a divorce decree is a creature of state statute.  Conn. Gen. Stat. § 46b-86.  That section provides in pertinent part that:

> Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.

Conn. Gen. Stat. § 46b-86(a).  The Connecticut Appellate Court recently reiterated the long standing rule of law that to obtain a modification of alimony or child support, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it.  *O'Donnell v. Bozzuti*, 148 Conn.App. 80 (2014).  "Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of an existing order [for alimony or support].  In making such an inquiry, the trial court's discretion is essential."  *Winters v. Winters*, 140 Conn. App. 816, 822 (2013).  This is exclusively a state court function as further exemplified by the fact that this Court can find no decisions issued by a federal court in the Second Circuit applying the

Connecticut statute governing the modification of alimony or support orders and
judgments, Conn. Gen. Stat. § 46b-86(a).

Accordingly, this action is barred by the domestic relations exception to
federal jurisdiction and must be dismissed.  *See, e.g.*, *Hamilton v. Hamilton-
Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (ex-husband's claim to have his name
removed from loans held jointly with his ex-wife was precluded by domestic
relations exception to federal court's jurisdiction, despite his contention that ex-
wife's actions jeopardized his federal employment, where claim was "matrimonial
in nature" as it was grounded in his ex-wife's purported violation of state court
order for temporary support and state court final judgment of divorce);
*McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999) (action was barred by the
domestic relations exception where plaintiff ex-wife, who was a party to a
separation agreement incorporated into a divorce decree which called for the sale
of marital property, was "attempting to disguise the true nature of the action by
claiming that she [was] merely making a claim for damages based on a breach of
contract," but where "the alleged 'contract' is part of a separation agreement that
was voluntarily entered into by the parties, and the separation agreement was
incorporated into the divorce decree" and therefore "involve[d] issues arising out
of conflict over a divorce decree, and, according to *Ankenbrand*t, [came] within
the domestic relations exception."); *Weiss v. Weiss*, 375 F. Supp. 2d 10 (D. Conn.
2005) (ex-wife's diversity action against former husband and law partner alleging
breach of contract, breach of fiduciary duty, fraud, and conversion, arising out of
ex-husband's alleged non-compliance with certain terms of their marital

dissolution agreement, was barred by the domestic relations exception); *Puletti v. Patel*, 05 CV 2293 (SJ), 2006 WL 2010809 (E.D.N.Y. July 14, 2006) (action alleging conspiracy to violate father's due process rights and his right to associate with his child was barred by domestic relations exception, as father was effectively asking court to review a portion of his state court custody proceeding, which would force federal court to reexamine and reinterpret the evidence presented before the state court if action were to proceed); *Rabinowitz v. New York*, 329 F. Supp. 2d 373 (E.D.N.Y. 2004) (action against state, state courts, judge, law guardian, and attorneys was barred by domestic relations exception where father challenged grant of sole custody of children to their mother and where court would be forced to reexamine and reinterpret the evidence brought before the state court in earlier proceedings if district court were to entertain action); *Elmasri v. England*, 111 F. Supp. 2d 212 (E.D.N.Y. 2000) (action alleging a conspiracy to lie to state court justice handling plaintiff's divorce and custody proceedings was barred by domestic relations exception to the jurisdiction of the federal courts, even though plaintiff sought relief he did not seek in his divorce and custody trial, as the court would be forced to reexamine and reinterpret the evidence presented before the state court if action were to proceed).

## V.      Conclusion

For the foregoing reasons, the Court DISMISSES this action for lack of subject matter jurisdiction.  The Clerk is directed to close this case.

**IT IS SO ORDERED.**


_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: May 16, 2014**